IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EVAN JAMON WOODARD,

    Defendant.

Case No. 18-CR-209-GKF

**OPINION AND ORDER**

On January 7, 2019, this Court denied the Motion to Suppress Evidence [Doc. 13] of defendant Evan Jamon Woodard on the record. [Doc. 22]. In order to memorialize the court's decision, the court enters the following opinion and order.

**I. Background**

On May 12, 2018, two Tulsa Police Department ("TPD") officers responded to a call in North Tulsa from defendant's ex-girlfriend (Ms. Quanita Landrum) alleging the defendant had violated a protective order.[1] Upon arrival, the TPD officers learned that the protective order had not been served on defendant and defendant was no longer on the premises. TPD officers told Ms. Landrum that they would search the area for the defendant to serve him with the protective order. Ms. Landrum described the car defendant was driving and indicated the direction he had gone. One of the officers ran a records check on the defendant and discovered that he had an active misdemeanor warrant for public intoxication.

---

[1] The facts were obtained primarily from testimony offered during the hearing on defendant's motion to suppress that took place on November 26, 2018 [*see* Doc. 48] and January 7, 2019 [*see* Doc. 49].

While patrolling the area, the officers spotted defendant's car and activated their lights to pull him over. Defendant continued driving for approximately 10 seconds, pulling off into a QuikTrip parking lot. The officers followed defendant into the parking lot, initiated the traffic stop, and placed defendant under arrest for the outstanding warrant. At some point during or soon following the arrest, two additional TPD officers arrived.

After the defendant was placed under arrest for the outstanding misdemeanor warrant, the TPD officers decided to impound the car defendant was driving and conduct an inventory search. TPD officers found a black bag containing marijuana and a white powdery substance that later tested presumptively positive for cocaine. TPD officers also found a small digital scale and a loaded pistol in a partially open backpack. TPD officers proceeded to ask defendant if he had any prior felony convictions, which defendant admitted to. At that point, a TPD officer read the defendant his *Miranda* rights. At no point during the arrest did defendant admit that the car was his, nor did the TPD officers discover evidence of car insurance.

Defendant filed a motion to suppress evidence from the warrantless inventory search of his car on October 11, 2018. [Doc. 13]. The government responded on November 15, 2018. [Doc. 18]. The court heard testimony and oral argument on the matter on November 26, 2018 [*see* Doc. 48] and January 7, 2019 [*see* Doc. 49]. Upon consideration of the parties' briefing, argument of counsel, and testimony presented, the court concluded that the motion should be denied. [Doc. 49, p. 73]. Accordingly, the court denied the motion on the record. [*Id.*, pp. 73-74].

## II. Analysis

Inventory searches are a well-recognized exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (upholding inventory search

of closed containers before vehicle impoundment).[2] However, the Fourth Amendment still requires that the inventory search be "reasonable." *Id.* The issue in this case was whether the impoundment—and related inventory search—was reasonable under the Fourth Amendment, especially given that the vehicle was parked on private property belonging to QuikTrip.

The Tenth Circuit has held "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both standardized criteria and a reasonable, non-pretextual community-caretaking rationale." *United States v. Sanders*, 796 F.3d 1241, 1248 (10th Cir. 2015). The government argued that the impoundment here was constitutional, despite the car not impeding traffic or impairing public safety, because it was conducted pursuant to (1) a standardized policy and (2) a reasonable, non-pretextual community-caretaking rationale. [Doc. 18, pp. 6-7]. This court agreed.

*First*, the impoundment was conducted pursuant to standardized criteria.[3] TPD policy on impounding vehicles provides:

> Officers will impound vehicles only when necessary. Officers are authorized to move or cause to be removed any vehicle from a street, highway, shoulder, or other public way to the nearest garage designated or maintained by the City of Tulsa that meets the criteria for vehicle impoundment. State statute prohibits officers from using the insurance database as the primary reason for a traffic stop. Officers shall use discretion when impounding vehicles based on the lack of compulsory insurance.

---

[2] The government has a strong interest in protecting property while it is in police custody; insuring against claims of lost, stolen, or vandalized property; and guarding the police from danger. *Bertine*, 479 U.S. at 371. "[T]hese strong governmental interests and the diminished expectation of privacy in an automobile" have led the Supreme Court to uphold warrantless inventory searches of automobiles. *Id.*

[3] Notably, "the existence of standardized criteria [is] the touchstone of the inquiry into whether an impoundment is lawful." *Sanders*, 796 F.3d at 1249. The case here is distinguishable from *Sanders* itself where there was no standardized policy permitting the impoundment of vehicles located on private property. *See id.* at 1250 (finding impoundment of a car in a private parking lot open to the public unconstitutional). Moreover, *Sanders* cannot be read to render every impoundment of a vehicle legally parked in a parking lot unconstitutional. *See United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989) ("The fact that the vehicle was legally parked in a parking lot does not, in and of itself, require the finding that impoundment was unnecessary.").

Tulsa Police Dep't, Proc. File No. 31-112G, Procedure re: Impounding Vehicles, General (2018).[4] Procedure 1(b) further specifies that "Officers may impound vehicles" when

> A vehicle has been abandoned or the *driver was arrested* and the *vehicle is left unattended* in a location that would constitute a traffic hazard or is *highly susceptible to damage or vandalism*. This includes private property open to the public when the offense the vehicle was initially stopped for occurred on a public way.

*Id.* (emphasis added).[5] The government argued that the TPD officers impounded the vehicle pursuant to this policy because (1) the driver was arrested, (2) the car would have been left unattended, and (3) the car was located in a high crime area making it susceptible to damage or vandalism. [Doc. 18, p. 6]. There is no dispute that defendant was driving the car at issue, was arrested, and that there was no one else on hand to drive the car. Further, Officer Douglas testified that the car was parked in "a high-crime area," specifying that he encounters "lots of larcenies, lots of burglary-from-vehicle calls, auto thefts, things like that" there. [Doc. 48, p. 17]. There was some discussion at the hearing as to whether the language of the policy contemplated impoundments on private property where the traffic stop was initiated on a public way for an offense that occurred elsewhere [*Id.*, pp. 54-56], but the court agreed with the government that the policy is not limited to those situations where the initiating offense occurred on a public way. The policy can reasonably be read to include situations where a stop was initiated on a public way but the defendant continued on for approximately 10 seconds before pulling in to a private parking lot that is open to the public. Accordingly, the court found that the impoundment was properly

---

[4] Publicly available at https://www.tulsapolice.org/media/165446/Policy%20Manual2019.pdf.

[5] In describing his understanding of the policy, Officer Douglas testified

> When we arrest somebody out of a vehicle . . . we have an obligation to make sure that vehicle's secure . . . . If it's in a commercial lot, like this one, and we feel that it's a high-crime area, someone could break into it, we have -- if we arrest somebody out of a vehicle, we have liability for leaving that vehicle there because it's our fault that the vehicle is there left unattended. So our policy is that we – we tow on the instance where we believe it's a high-crime area.

4

conducted pursuant to a standardized policy, namely TPS Procedure File No. 31-112G. *See United States v. Barraza*, No. 15-CR-01015, 2016 WL 9777163 at *3 (D.N.M. June 27, 2016) (published procedures satisfy the "standardized policy" requirement of *Sanders*).

*Second*, the officers had a reasonable, non-pretextual community-caretaking rationale for impounding the vehicle. The Tenth Circuit in *Sanders* noted that "[a]scertaining whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale is not an easy task." *Sanders*, 796 F.3d at 1250. The *Sanders* court noted a non-exhaustive list of factors for courts to consider in their analysis:

> (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

*Id.* The court considered each factor in this case. First, the vehicle was on private property. Second, the property owner (QuikTrip) was not consulted.[6] However, the court found persuasive testimony from QuikTrip's manager of public and governmental affairs, Mr. Charles Michael Thornbrugh, that QuikTrip prefers abandoned cars due to arrests to be removed. [Doc. 48, pp. 35-36]. Mr. Thornbrugh further testified that QuikTrip had communicated that policy to TPD, even though QuikTrip was not consulted in this particular instance. [*Id.*, p. 37]. Third, the defense argued that an alternative to impoundment existed especially given that defendant was placed under arrest for a misdemeanor warrant and could have returned to retrieve the car later that day after posting bond. [Doc. 49, p. 68]. In response, the government argued that there was no one else on hand to remove

---

[6] During the hearing, the court indicated that the second factor was concerned with whether the owner of the vehicle had been consulted, rather than the property owner. Nevertheless, the court specifically found that "Officer Douglas was under the correct impression that Quiktrip wished such vehicles removed" given Mr. Thornbrugh's testimony and correctly noted that the defendant did not give his consent to the impoundment, which is relevant to the analysis under the fifth factor. [Doc. 49, pp. 73-74]. The court's technical error had no bearing on its decision.

5

the vehicle.[7] As to the fourth and fifth factors, there was no dispute that the car was not implicated in the crime nor did the driver consent to the impoundment.

Even though the court "might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure," (*id.* at 374), it could not conclude that it was unreasonable for the police to impound the vehicle from a private parking lot open to the public in a high crime area and thus susceptible to theft or vandalism before the defendant could return, even if a short time later. Further, even if the defendant were to return quickly, he would be unable to lawfully drive the car away for lack of compulsory car insurance. As in *Bertine*, the location of the car on private property "does not completely eliminate the need for inventorying; the police may still wish to protect themselves or the owners of the lot against false claims of theft or dangerous instrumentalities." *Bertine*, 479 U.S. at 373. Here, the officers exercised reasonable discretion in assessing impoundment, especially given that there was no one on hand to drive the car, the defendant was under arrest, and the car was located in a high-crime area. Further, the officers correctly understood that the private owner would prefer the car to be removed rather than abandoned. Accordingly, the court was satisfied that the officers held a reasonable, non-pretextual community-caretaking rationale for impounding the vehicle, namely preventing theft and vandalism of the car.

Because the impoundment and accompanying inventory search satisfied the Fourth Amendment reasonableness requirement as articulated by the Tenth Circuit in *Sanders*, the court denied defendant's motion to suppress [Doc. 13] on the record on January 7, 2019. That decision is memorialized here.

---

[7] The government also argued that even if there were another person on hand to remove the car, they could not have done so legally because there was no evidence that the car was insured. [Doc. 18, p. 9].

**III. Conclusion**

WHEREFORE, the Court memorializes its order denying defendant's motion to suppress [Doc. 13] in this opinion.

IT IS SO ORDERED this 20th day of September, 2019.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma